# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CHRISTOPHER W. FARABEE,

    **Plaintiff,**

v.

PERFECTION COLLECTION LLC, ET AL.,

    **Defendants.**

Case No. 17-CV-02528-JAR-GEB

## DEFAULT JUDGMENT

Before the Court are Plaintiff Christopher W. Farabee's Motion for Default Judgment (Doc. 51) and Motion for an Award of Attorney Fees and Costs (Doc. 54). The Court has reviewed Plaintiff's motions and the attached exhibits and finds that default judgment should be entered in favor of Plaintiff and against Defendant Perfection Collection LLC, and that Plaintiff should be awarded fees and costs as set forth below.

Plaintiff filed his Petition in this matter in the District Court of Wyandotte County, Kansas on August 28, 2017, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), against Defendants Perfection Collection LLC ("Perfection Collection"), Trans Union LLC ("Trans Union"), and Experian Information Solutions Inc. ("Experian"). Plaintiff's Petition also asserts claims against Perfection Collection for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Trans Union removed this action to this Court on September 12, 2017, and both Trans Union and Experian filed answers to Plaintiffs' Complaint in October 2017. Perfection Collection, however, failed to answer or appear, and Plaintiff filed an application for clerk's entry of default on December 18, 2017.

In an order dated December 20, 2017, the Court denied Plaintiff's application for an entry of default based on its finding that Plaintiff had not served Perfection Collection in compliance with either Federal or state law, and ordered Plaintiff to effectuate proper service on or before January 19, 2018.[1] On January 30, 2018, Magistrate Judge Gwynne E. Birzer extended Plaintiff's deadline for accomplishing service to March 2, 2018.[2] Plaintiff then filed proof that Perfection Collection was served on February 21, 2018.[3] Shortly thereafter, Plaintiff settled his claims against Trans Union and Experian, leaving Perfection Collection as the only remaining defendant in this case.

When Perfection Collection failed to answer or otherwise appear, Plaintiff filed a second application for clerk's entry of default on April 18, 2018, and default was entered on April 23, 2018.[4] Plaintiff then filed his motion for default judgment "solely on his claim for damages under the FDCPA."[5] Plaintiff seeks statutory damages in the amount of $1,000 pursuant to § 1692k(a)(2)(A), post-judgment statutory interest at the lawful rate, and his reasonably incurred attorney fees and costs pursuant to § 1692k(a)(3).

On June 5, 2018, the Court directed Plaintiff to file a supplement to his motion for default judgment setting forth a specific fee request accompanied by supporting documentation.[6] In response, Plaintiff filed a separate motion for an award of attorney fees and costs, which is

---

[1] Doc. 21.

[2] Doc. 31.

[3] Doc. 40.

[4] Doc. 49.

[5] Doc. 52 at 1. Plaintiff did not seek default judgment on his FCRA claim against Perfection Collection. Thus, on July 5, 2018, the Court issued a Notice and Order to show cause why Plaintiff's FCRA claim should not be dismissed with prejudice for lack of prosecution. In response, Plaintiff voluntarily dismissed his FCRA claim against Perfection Collection on July 16, 2018. Doc. 58.

[6] Doc. 53.

supported by a declaration from Plaintiff's counsel, billing records, a Kansas Bar Association Report on the 2017 Economics of Law Practice Survey in Kansas, and documentation of costs.

**I.     Standard**

Following entry of default, Fed. R. Civ. P. 55(b)(2) allows the court to enter default judgment. Once default is entered, the defendant is not entitled to defend itself on the merits.[7,8] Rather, the court must determine whether the plaintiff's allegations—taken as true—state a claim against the defendant.[9] If the court finds that there is a sufficient basis in the pleadings for default judgment, that judgment only establishes liability; it does not establish the amount of damages.[10] The factual allegations in the complaint relating to the amount of damages are not taken as true.[11] Rather, "'[d]amages may be awarded only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.'"[12] However, where the damages claimed are capable of mathematical calculation, Rule 55(b)(2) "does not require that the district court receive evidence on the claimed damages amount before entering default judgment; rather, the Rule simply allows the

---

[7] *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 & n.11 (10th Cir. 2003) (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002)) (other citations omitted), *cert. denied*, 540 U.S. 1089 (2003).

[8] Default judgment may only be entered against defendants whom the court determines are not minors or incompetent persons. Fed. R. Civ. P. 55(b). As there is no evidence in the record that Defendant—a consumer debt collection agency—is a minor or an incompetent person, the Court may enter default judgment against it.

[9] *See, e.g., Kalinich v. Grindlay*, No. 14-1120-SAC, 2014 WL 3740439, at *1 (D. Kan. July 30, 2014) ("Even after default, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment since a part in default does not admit conclusions of law.") (quoting *Olivas v. Bentwood Place Apartments, LLC*, No. 09-4035-JAR, 2010 WL 2952393, at *4 (D. Kan. July 26, 2010)); *Trang v. Bean*, 600 F. App'x 191, 193–94 (5th Cir. 2015).

[10] *See, e.g. Hermeris, Inc. v. McBrien*, No. 10-2483-JAR, 2012 WL 1091581, at *1 (D. Kan. Mar. 30, 2012*); DeMarsh v. Tornado Innovations, L.P.*, No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009).

[11] *See, e.g., Kalinich,* 2014 WL 3740439, at *1 (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3rd Cir. 1990); *Beck v. Atl. Contracting Co.*, 157 F.R.D. 61, 64 (D. Kan. 1994) (citation omitted), *superseded by statute on other grounds as recognized by Cessna Fin. Corp. v. VYWB, LLC*, 982 F. Supp. 2d 1226, 1233 (D. Kan. 2013).

[12] *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1275 (D. Kan. 2016) (quoting *DeMarsh*, 2009 WL 3720180, at *2).

3

district court to conduct a hearing if it believes that additional investigation or evidence is necessary."[13] Here, the Court has adequate information before it to determine the amount of default judgment without a hearing.

In his motion for default judgment on his FDCPA claim against Perfection Collection, Plaintiff does not seek actual damages, but statutory damages of $1,000 and attorney fees and costs. Plaintiff alleges the elements necessary to state a claim for violation of the FDCPA—namely that he is a consumer as defined by the FDCPA,[14] that Perfection Collection is a debt collector as defined by the FDCPA,[15] and that in attempting to collect a debt[16] from Plaintiff, Perfection Collection engaged in an act prohibited by the FDCPA.[17]

More specifically, Plaintiff alleges that in 2017, Perfection Collection reported a past-due balance of $4,291.00 owed by Plaintiff to Medical-Vision Security on Plaintiff's credit reports maintained by Trans Union and Experian, which are credit reporting agencies. However, Plaintiff never signed up for an account with Medical-Vision Security, and disputed the improper balance with Trans Union and Experian. When the credit reporting agencies informed Perfection

---

[13] *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011) (citing Fed. R. Civ. P. 55(b)(2); *Finkel v. Romanowicz*, 577 F.3d 79, 87 (2d Cir. 2009)).

[14] Doc. 1-1, ¶¶ 4, 42. The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

[15] Doc. 1-1, ¶¶ 43–44. The statute defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . ." 15 U.S.C. § 1692a(6).

[16] Doc. 1-1, ¶¶ 11–12, 45. Under the FDCPA, a "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

[17] *See, e.g., Maynard v. Cannon*, 401 F. App'x 389, 393 (10th Cir. 2010) ("To prevail on a claim under the FDCPA, a plaintiff must prove that a 'debt collector[']s' effort to collect a 'debt' from a 'consumer' violated some provision of the FDCPA.") (quoting *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3rd Cir. 2005)).

Collection that Plaintiff disputed the debt, Perfection Collection failed to investigate, but nonetheless re-verified that the debt and its reporting were correct.

Plaintiff argues that he has pleaded facts establishing that Perfection Collection violated § 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." Specifically, § 1692f(1) prohibits the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Plaintiff alleges that the debt Perfection Collection sought to collect was not his debt and was not owed by him pursuant to any law or agreement,[18] and that Perfection Collection continued to report incorrect information about him to credit reporting agencies "intentionally with the purpose of coercing Plaintiff to pay the alleged debt."[19] The Court finds that Plaintiff has pleaded facts sufficient to establish a violation of § 1692f.

Further, although not mentioned in his motion for default judgment, Plaintiff's Petition also alleges that Defendant violated § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Plaintiff's allegations establish that after being informed that Plaintiff disputed the debt to Medical-Vision Security, Perfection Collection continued to falsely represent the character, amount, or legal status of that debt in violation of § 1692e(2)(A) and communicated credit information that it knew or should have known was false in violation of § 1692e(8).[20] Based on the allegations set forth in Plaintiff's Petition, the default in this case establishes that Perfection

---

[18] *Id*., ¶¶ 12, 49.

[19] *Id*., ¶ 51.

[20] Doc. 1-1, ¶¶ 13–14, 28–29, 48. Plaintiff's Petition also references § 1692e(5), which prohibits debt collectors from making a "threat to take any action that cannot legally by taken or that is not intended to be taken." However, Plaintiff's Petition is devoid of allegations concerning interactions between Plaintiff and Perfection Collection and any threats Perfection Collection may have made.

Collection violated the FDCPA. Having established liability, the Court now turns to the issues of damages and other relief.

## II. Statutory Damages

Plaintiff seeks statutory damages only, rather than both actual and statutory damages under the FDCPA. There is no requirement that a plaintiff have suffered actual damages in order to recover statutory damages under the Act.[21] Rather, statutory damages are available subject to the court's discretion.[22] Under the statute, the court must consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which the noncompliance was intentional."[23] This case involves Perfection Collection attempting to collect a debt that Plaintiff did not owe. This case also involves at least two instances of Perfection Collection falsely representing to credit reporting agencies that Plaintiff owed that debt—conduct that could harm Plaintiff's credit rating. This conduct is abusive and warrants a statutory damages award.[24]

However, both Plaintiff's Petition and his motion for default judgment are devoid of specific allegations concerning *how* Perfection Collection attempted to collect the debt beyond providing false information to credit reporting agencies. Although Plaintiff's counsel has submitted an affidavit regarding Perfection Collection's failure to defend this case, Plaintiff has

---

[21] *See McCammon v. Bibler, Newman & Reynolds, P.A.*, 493 F. Supp. 2d 1166, 1171 (D. Kan. 2007) ("[T]he Tenth Circuit has explicitly recognized that, because 'the FDCPA provides for liability for attempting to collect an unlawful debt . . . and permits the recovery of statutory damages . . . in the absence of actual damages[,] . . . .actual damages are not required for standing under the FDCPA.'") (quoting *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006)) (alterations in original).

[22] 15 U.S.C. § 1692k(a)(2); *O'Connor v. Check Rite, Ltd.*, 973 F. Supp. 1010, 1020 (D. Colo. 1997).

[23] 15 U.S.C. § 1692k(b)(1).

[24] *See, e.g., Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 803 (E.D. La. 2013) (finding statutory damages warranted in addition to actual damages "considering Defendant's refusal to respond to this lawsuit or any of Plaintiff's efforts to dispute the alleged debt, thereby ensuring that the disputed debt remains on Plaintiff's credit score up to seven years, despite Plaintiff's efforts to resolve the issue.").

not submitted his own affidavit setting forth facts sufficient for the Court to consider the precise nature of Perfection Collection's course of conduct. Thus, the Court awards statutory damages in the amount of $800 rather than the full $1,000 requested.[25]

## III. Attorney Fees

Plaintiff is entitled to an award of reasonable attorney fees and costs under § 1692k(a)(3). In a separate motion for attorney fees and costs, Plaintiff submits counsel's time records and requests attorney fees in the amount of $11,639.00, representing forty-five hours of work by four different timekeepers. Plaintiff also seeks $152.50 in costs.

Once a party has established its entitlement to fees, the court must determine what fee is reasonable. "In determining reasonable attorney fees, the court must arrive at a lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate and then determine whether the lodestar figure is subject to upward or downward adjustment."[26] The applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[27] Once an applicant has met this burden, the lodestar figure is presumed to be a reasonable fee.[28]

For the applicant to satisfy its burden of proving the number of hours reasonably spent on the litigation, it must submit "meticulous, contemporaneous time records that reveal, for each

---

[25] *See, e.g., O'Connor*, 973 F. Supp. at 1020 ("To the extent 'additional damages' are available in cases where plaintiff has proven no actual damages, the award of such additional damages is left to the court's discretion."); *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997) (stating that "it is within the district court's discretion to decide whether and if so how much to award, up to the $1,000 ceiling) (citations omitted).

[26] *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1280 (D. Kan. 2016) (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995)); *Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[27] *Mathiason*, 187 F. Supp. 3d at 1280 (citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249–50 (10th Cir. 1998)).

[28] *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (citing *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563–65 (1986); *Cooper v. Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990)).

lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[29] The prevailing party "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary and the court has a corresponding obligation to exclude hours not 'reasonably expended' from the calculation."[30] "A district court approaches this reasonableness inquiry 'much as a senior partner in a law firm would review the reports of subordinate attorneys when billing clients . . . .'"[31] "[W]hat is reasonable in a particular case can depend upon factors such as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side."[32] Further, "[a] district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time."[33]

The Court finds that Plaintiff has failed to submit adequate evidence to support that a reasonable amount of time was spent on this litigation as to the defaulting defendant, Perfection Collection. Until Plaintiff's March 27, 2018 settlement with Trans Union and Experian, there were three defendants in this case, and many of Plaintiff's counsel's time entries are not specific to any one defendant despite Plaintiff's assertion that "[a]ctivities which could be specifically claimed against co-Defendants Trans Union LLC and Experian Information Solutions Inc. have

---

[29] *Case*, 157 F.3d at 1250 (citation omitted).

[30] *Mathiason*, 187 F. Supp. 3d at 1280–81 (quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998)); *see also Robinson*, 160 F.3d at 1280–81.

[31] *Caputo v. Prof'l Recovery Servs., Inc.*, No. 00-4208-SAC, 2004 WL 1503953, at *3 (D. Kan. June 9, 2004) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *overruled in part on other grounds, Del. Valley Citizens' Council for Clean Air*, 483 U.S. at 725).

[32] *Id.* (quoting *Ramos*, 713 F.2d at 554) (alteration in original).

[33] *Case*, 157 F.3d at 1250 (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995)).

been deleted from the Billing Statements."[34]  Rather, many of counsel's billing entries state very generally, "emails sent or reviewed," or "matter administration," and these entries are often attributed to the timekeepers billing at the highest rates.[35]  The Court assumes that Plaintiff's settlement with Trans Union and Experian took fees into account and, in any case, it would be unfair to permit Plaintiff to collect the entirety of these fees from Perfection Collection when the work performed was in furtherance of the case against all three defendants.[36]

As Plaintiff points out, "[a]n analysis of billing records can help the court to ensure that counsel demonstrates appropriate billing judgment while taking steps to avoid any duplicative efforts that may inflate time spent."[37]  Having conducted a thorough analysis of Plaintiff's counsel's billing records, the Court will factor into the lodestar one-third of the time for entries that pertain to all three defendants, or that are insufficiently detailed to allow the Court to determine otherwise.  The Court will factor into the lodestar the full amount of time entries that specifically relate to work necessary to perfect service upon Perfection Collection, obtain default judgment, pursue attorney fees and costs, or otherwise prosecute Plaintiff's claims against

---

[34] Doc. 55 at 4–5.

[35] Doc 54-3.

[36] *See, e.g., Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *21 (S.D.N.Y. Sept. 8, 2016) (noting that "this Court and others have reduced or excluded attorneys' hours that were expended on matters related to non-defaulting defendants, finding that defaulting defendants are not responsible for attorneys' fees related to other, non-defaulting defendants in the case and that, where attorneys seek fees that were billed for services related to both non-defaulting and defaulting defendants, such mixed fees should be reduced by a percentage.") (citations omitted); *Top Pearl, Ltd. v. Cosa Freight, Inc.*, Civil Action No. H-10-1249, 2013 WL 5575878, at *3 (S.D. Tex. Oct. 9, 2013) ("A party seeking attorney's fees not only has a duty to segregate nonrecoverable fees from recoverable fees, but it must also segregate the fees owed by different parties.") (citations omitted); *Colon v. City of New York*, Nos. 09 CV 0008(JBW), 09 CV 00009(JBW), 2012 WL 691544, at *23 (E.D.N.Y. Feb. 9, 2012) ("In light of the straightforward nature of the default proceedings against [the defaulting defendants] and based on the Court's review of the documentation counsel prepared for these proceedings, the Court concludes that there was both redundancy in billing and excessive billing and therefore respectfully recommends reducing plaintiffs' fees by 10% after reduction for hours spent unrelated to the defaulting defendants."); *Beishir v. Chase Home Fin. LLC*, No. 8:07-CV-65-T-27MAP, 2008 WL 533881, at *2 (M.D. Fla. Feb. 27, 2008) (finding that time entries relating to non-defaulting defendants should not be charged to defaulting defendants).

[37] Doc. 55 at 3–4 (citing *Anchondo v. Andersen, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010)).

Perfection Collection. The Court acknowledges that Plaintiff's counsel have written off some of their time in an apparent effort to avoid charging Perfection Collection for the entirety of work performed in furtherance of the case in general. However, the Court finds that the hours billed still remain unreasonably high for the relatively simple, routine nature of the work performed as to Perfection Collection.

Calculating the lodestar also requires the court to examine the hourly rate requested by the Plaintiff, which ranges from $175 to $400 per hour. In examining the hourly rate, the court is to refer to the "prevailing market rate in the relevant community."[38] The relevant community is the place where the litigation occurs.[39] "When determining the appropriate rate to apply to the reasonable hours, 'the district court should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation.'"[40] "The moving party bears the burden to show that the requested rates are reasonable, that is, they 'are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"[41] While several courts have recognized that "[p]aying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions,"[42] the Court also bears in

---

[38] *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)).

[39] *Jayhawk Invs. L.P. v. Jet USA Airlines, Inc.*, No. 98-2153-JWL, 1999 WL 974027, at *4 (D. Kan. Aug. 25, 1999) (citation omitted).

[40] *Weaver v. JTM Performant Recovery, Inc.*, No. 2:13-cv-2408-JTM, 2014 WL 4843961, at *9 (D. Kan. Sept. 29, 2014) (quoting *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000)); *see also Case v. Unified Sch, Dist. No. 233*, 157 F.3d 1243, 1256 (10th Cir. 1998) ("The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time.") (citation omitted).

[41] *Weaver*, 2014 WL 4843961, at *9 (quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998)).

[42] *Tripp v. Berman & Rabin, P.A.*, Case No. 14-cv-2646-DDC-GEB, 2017 WL 2289500, at *7 (D. Kan. May 25, 2017) (quoting *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995)); *see also Dowling v. Litton Loan*

mind that attorney fees in FDCPA cases should be not be so high as to encourage attorneys to pursue "lackluster" or "dubious" claims.[43] In determining a reasonable rate, if the court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, "use other relevant factors, including its own knowledge, to establish the rate."[44]

To establish that his attorneys' rates are reasonable under the applicable standard, Plaintiff has submitted the declaration of his lead counsel, A.J. Stecklein, who attests to his own credentials and those of the other timekeepers whose fees Plaintiff seeks to recover. According to that declaration, Mr. Stecklein has twenty-four years of litigation experience and, since 2008, his practice has been primarily devoted to consumer protection cases, particularly cases involving the FDCPA and the FCRA. Mr. Stecklein's partner, Michael H. Rapp, is also an experienced FDCPA and FCRA attorney with six years in practice. An associate attorney, Matthew S. Robertson, has two years of experience and his practice focuses almost exclusively on individual and class-action cases brought under the FDCPA and the FCRA. Finally, Anne M. Lamoy is a paralegal with fifteen years of experience.

Plaintiff has also submitted *A Flash Report on the 2017 Economics of Law Practice Survey in Kansas*, published by the Kansas Bar Association, to establish the prevailing market rates in the Kansas City area. This report indicates that the hourly rates requested for Mr. Stecklein ($400) and Mr. Rapp ($325) are at the high end of the spectrum for attorneys with their

---

*Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008).

[43] *Obenauf v. Frontier Financial Grp., Inc.*, 785 F. Supp. 2d 1188, 1214 (D.N.M. 2011) (stating that while attorney fees in FDCPA cases "should be adequate to attract competent counsel . . . they should not [be] so large that it is a windfall for attorneys—who should not be encouraged to grow fat off lackluster cases, or pester the court with trifles in the hopes of capturing large attorneys' fees from dubious claims.").

[44] *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (citing *Case*, 157 F.3d at 1257); *see also Weaver*, 2014 WL 4843961, at *9 ("The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area.") (quoting *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987)).

years of experience. Mr. Stecklein's requested rate places him above the ninety-fifth percentile for attorneys practicing consumer law, but around the eightieth percentile across all practice classifications for attorneys with twenty to twenty-nine years of experience. Mr. Rapp's requested rate places him somewhere in the range of the ninetieth percentile, both for attorneys practicing consumer law and attorneys with six to nine years of experience practicing across all areas. The report indicates that the hourly rate requested for Mr. Robertson ($215) falls around the seventy-fifth percentile for attorneys who have practiced for less than six years across all practice areas, and slightly below the median rate for attorneys practicing consumer law.

While certainly on the high end for Mr. Stecklein and Mr. Rapp, the Court finds that the rates requested for Plaintiff's attorneys are within a reasonable range for counsel of comparable experience within the Kansas City community.[45] The Court also finds that the requested hourly rate for Ms. Lamoy ($175) is reasonable for an experienced paralegal.

Applying these rates to the number of hours reasonably spent, the lodestar figure is as follows.

- For time entries relating to work in furtherance of the case against all three defendants, and/or for time entries that lack sufficient detail to differentiate between defendants: (8.4 hours x $400) + (2.9 hours x $325) + (2.9 hours x $215) + (4.8 hours x $175) = $5,766. These hours/fees are reduced by two thirds as discussed above, for a subtotal of $1,922.

- For time entries that specifically relate to work necessary to obtain service upon Perfection Collection, pursue default judgment and attorney fees and costs, or

---

[45] *See Tripp*, 2017 WL 2289500, at *5 (finding that $400 per hour "reflects the prevailing market rate—indeed a rate on the high end—for senior attorneys in the Kansas City area" and awarding that rate to Mr. Stecklein for his work as class counsel in FDCPA class action).

otherwise prosecute Plaintiff's claims against Perfection Collection: (2.1 hours x $400) + (.6 hours x $325) + (17.8 hours x $215) + (5.5 hours x $175) = $5,824.50.

Taken together, the two forgoing subtotals equal a lodestar amount of $7,746.50. "The lodestar is the presumptively reasonable fee."[46] "'The product of reasonable hours times a reasonable rate does not end the inquiry,' however, of determining whether a fee is reasonable."[47] "A district court may also consider a number of other factors when adjusting a fee upward or downward, including the reasonableness of the fees in light of the success obtained."[48] In evaluating the success obtained, "the district court must make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar. 'There is no precise rule or formula' for making such determinations."[49]

In this case, Plaintiff's counsel achieved good but not excellent results, largely due to their failure to fully support Plaintiff's claim for statutory damages, resulting in an award of $800 rather than the $1,000 requested. Given that failure and the simple nature of Plaintiff's case against Perfection Collection, the Court finds that a twenty percent reduction in fees is appropriate, resulting in a total fee award of $6,197.20.[50] This award is more reasonable—and,

---

[46] *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994) (citing *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355 (10th Cir. 1992)).

[47] *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)), *overruled on other grounds as recognized by Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006).

[48] *Id.* (citing *Hensley*, 461 U.S. at 434).

[49] *Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995) (quoting *Hensley*, 461 U.S. at 436).

[50] *Obenauf v. Frontier Fin. Grp., Inc.*, 785 F. Supp. 2d 1188, 1220 (D. N.M. 2011) (awarding $2,500 in attorney fees rather than requested $4,883.25 in FDCPA default judgment case because "[w]hen 'a plaintiff has achieved only partial or limited success,' the district court, in calculating an appropriate fee award, 'may simply reduce the award to account for the limited success.'") (citing *Hensley*, 461 U.S. at 436–37).

in fact, generous—compared to what other courts have awarded in similar FDCPA cases involving default judgment.[51] The Court finds that Plaintiff is also entitled to $152.50 in costs.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Default Judgment (Doc. 51) is **granted** and Plaintiff's Motion for Attorney Fees and Costs (Doc. 54) is **granted in part**. The Clerk of the Court shall enter judgment for Plaintiff as follows:

1. $800 in statutory damages for Perfection Collection's violation of the Fair Debt Collection Practices Act;

2. $6,197.20 in attorney fees; and

3. $152.50 in costs;

for a total judgment of $7,149.70.

**IT IS SO ORDERED.**

Dated: July 19, 2018

                                                   S/ Julie A. Robinson
                                                   JULIE A. ROBINSON
                                                   CHIEF UNITED STATES DISTRICT JUDGE

---

[51] *See, e.g., Wojtasik v. Nat'l Credit Adjusters, LLC*, No. 14-2150-CM, 2014 WL 6879312, at *3 (D. Kan. Dec. 4, 2014) (awarding $3,000 in attorney fees in FDCPA case involving default judgment); *Villanueva v. Account Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1083 (D. Colo. 2015) (awarding $1,385 in attorney fees in FDCPA default judgment case); *Jenkins v. E. Asset Mgmt., LLC*, No. 4:08-cv-1032 CAS, 2009 WL 2488029, at *3 (E.D. Mo. Aug. 12, 2009) (awarding $3,125 in attorney fees in FDCPA default judgment case).